**Silver Appeal**

*Richard P. McBride*, for appellant.

*Robert C. Steiger*, for Board of Supervisors of Upper Southampton Township.

GARB, J., October 4, 1973.—We have before us for disposition the motion of the Township of Upper Southampton to quash the appeal of applicant. The appeal to this court was taken by applicant from the township's alleged denial of applicant's application for a curative amendment to the zoning ordinance.

Applicant filed a request for a curative amendment

of the zoning ordinance under and pursuant to the provisions of the Act of June 1, 1972, P. L. 238 (No. 93), sec. 1004, 53 PS §11004, and submitted same to the township supervisors for determination. Extensive hearings were held before the township supervisors on January 23, March 6, April 19, April 24 and April 26, 1973. Most of the actual time of these hearings was taken up with the presentation of testimony and evidence in support of the curative amendment, but testimony of other persons in opposition was heard at various times throughout. It is the contention of the applicant that the governing body, having failed to act on his request within 30 days after the termination of the hearing of April 26, 1973, the application is deemed denied by virtue of the provisions of the Act of Assembly and that, therefore, the appeal is well taken. The township contends, on the other hand, that the hearings had not been completed and that, therefore, the failure to act should not be deemed a denial and that, therefore, the appeal is premature.

Section 4 of section 1004 of the Municipalities Planning Code provides, in relevant part, as follows:

"For purposes of subsection (3) (ii) (which provides for appeal from the decision of the governing body), the landowner's request for a curative amendment is denied when (i) the governing body notifies the landowner that it will not adopt the amendment, or (ii) the governing body adopts another amendment which is unacceptable to the landowner, or (iii) the governing body fails to act on the landowner's request, in which event the denial is deemed to have occurred on the thirtieth day after the close of the last hearing on the request unless the time is extended by mutual consent between the landowner and the municipality."

At the very end of the hearing held on April 26, 1973, the following colloquy ensued:

"MR. STEIGER: Of course, there is going to be at least one more hearing.

"THE CHAIRMAN: Probably two or so.

"MR. STEIGER: Probably more.

"THE CHAIRMAN: Well, thank you very much. I will now declare this hearing at an end, to be continued at a date to be set subsequently, which date, of course, will have to allow for the appropriate advertising again. As soon as we can arrive at that, we will notify Mr. Bell and his client."

The Mr. Steiger referred to in the notes of testimony is apparently Robert C. Steiger, Esq., the solicitor for the Upper Southampton Township Board of Supervisors. Immediately preceding the foregoing colloquy, the chairman had solicited any comments or testimony from the audience and none were forthcoming. Previously, the applicant had indicated that he had presented all of the evidence he wished to present pursuant to his amendment, whereupon the board of supervisors proceeded to call an expert witness of its own. Strenuous objection was made by applicant to the calling of this witness by the board of supervisors but the board determined to proceed to hear his testimony notwithstanding. The position of the township supervisors was that the board had the right to investigate independently and obtain independent testimony in support of or against any testimony that is presented on the application.

It is clear from the colloquy heretofore quoted that the board certainly did not consider that the hearing of April 26, 1973, constituted the last hearing on this application. In fact, subsequent to the close of this particular hearing the board of supervisors requested a check of counsel for the applicant to cover the cost of advertising the subsequent hearing.[1] Counsel

---

[1] Not the same counsel as now brings this appeal before us.

delivered such check to the board of supervisors but subsequently stopped payment thereon. Therefore, it is apparent to us, that at least as of the termination of the hearing of April 26, 1973, both the board and counsel for the applicant considered that the matter was still open and pending before the board and that there would be subsequent hearings.

The foregoing to the contrary notwithstanding, applicant argues to us that it is clear from the record that it was the intention of the board of supervisors at any subsequent hearings to hear witnesses produced and presented by the board itself. Applicant argues that it is totally improper and inappropriate for the board of supervisors to present evidence because they sit in a quasi-judicial function in hearing this application for curative amendment and, therefore, should not participate in the proceedings to the extent of presenting evidence. Therefore, so argues applicant, if the presentation of evidence by the board was the only business before them, the hearing of April 26, 1973, should be considered by us to be the final or "last hearing."

The difficulty with the proposition presented to us by the applicant is that it requires the quality of clairvoyance on our part in order to reach the conclusion he advocates on this appeal. Although logically it may appear that the evidence to be anticipated at future hearings would be evidence presented by and on behalf of the municipality, quite obviously we have no way of knowing that this will be the case. Even if this is the case, applicant asks us to prejudge that evidence and determine now that it is totally inappropriate and inadmissible. Obviously, we cannot do that. If it should develop that the evidence admitted by the township supervisors is inappropriate, then that is a matter to be brought to our attention when the matter is prop-

erly on appeal for a determination of whether or not they abused their discretion in arriving at whatever decision they may decide upon. Quite obviously, also, it may very well be that they will decide to grant the curative amendment requested by applicant. In short, we refuse to prejudge the evidence which may be received by the township supervisors at the hearings contemplated in the future.

As we think the preceding clearly indicates, we refuse at this time to propound as a rule of law a proposition that the township supervisors may never present any evidence whatsoever in a proceeding such as this. Assuming, without deciding, the argument of applicant that the board of supervisors sits in a quasi-judicial function in this case, it likewise functions in a legislative capacity to the extent that it is asked to amend or modify its own zoning ordinance. Even in its quasi-judicial function it is not ipso facto proscribed from investigating independently and obtaining independent testimony regarding an application for a curative amendment. That was the justification advanced by the township supervisors when the one expert was presented.

It is quite clear that a judge, in his judicial function in a trial, has the discretion to call witnesses on his own initiative as an inherent power of his judicial function. The power of the court to decide includes the inherent power to investigate and summon witnesses to accomplish this end. A trial judge in a proper exercise of his discretion may call additional witnesses when deemed necessary to elicit relevant and material facts and when those witnesses may contribute to a determination of the truth: Commonwealth v. Bready, 189 Pa. Superior Ct. 427 (1959). A trial judge may, in the exercise of a sound discretion, call and examine witnesses of his own accord. In fact, under certain circumstances it is necessary and imperative for the

court to do so: Commonwealth v. DiPasquale, 424 Pa. 500 (1967). See also, Commonwealth v. Burns, 409 Pa. 619 (1963). As stated in 9 Wigmore, Evidence (3d ed. 1940) §2484, and as cited with approval in Commonwealth v. DiPasquale, supra:

"The general judicial power itself, expressly allotted in every State constitution, implies inherently a power to investigate as auxiliary to the power to decide; and the power to investigate implies necessarily a power to summon and question witnesses."

Certainly, if a judge, in the exercise of his judicial function, has the power and authority within his discretion to summon and interrogate witnesses for the purposes of determining the truth, it cannot be argued that a board of township supervisors, even assuming they are acting in a quasi-judicial function, do not have the same duty and right.

We recognize that this discretion must be exercised and utilized sparingly and with great restraint. See Commonwealth v. DiPasquale, supra. The exercise of such power, however, does not, by itself, propel the hearing body into an adversarial role and thus deprive the legitimate parties to the litigation of their rights to due process. Of course, judicial tribunals must be not only unbiased but also avoid the appearance of bias and the foregoing obviously applies to quasi-judicial administrative tribunals. See Donnon v. Downingtown Civil Service Commission, 3 Comm. Ct. 366 (1971). However, any such bias or appearance of bias must be demonstrated on the record and may not be assumed: Ironstone Corporation v. Zoning Hearing Board, 5 Comm. Ct. 420 (1972).[2] Quite

---

[2] It should be noted that neither of the last two cases cited in the body of the opinion had to do with the presentation of evidence by the administrative tribunal itself. The same observation may be made of Limekiln Golf Course, Inc. v. Zoning Board of Adjustment of Horsham Township, 1 Comm. Ct. 499 (1971),

414

obviously, we can make no determination that the board of supervisors was biased or that the introduction of evidence was sufficient to give the appearance of bias without a complete record showing the evidence introduced.

We are satisfied that the foregoing amply demonstrates that the motion to quash the appeal must be granted and the matter remanded to the Board of Supervisors of the Township of Upper Southampton.

### ORDER

And now, to wit, October 4, 1973, it is hereby ordered, directed and decreed that the motion to quash the appeal is hereby sustained and the matter remanded to the Board of Supervisors of the Township of Upper Southampton for whatever further proceedings which may be appropriate.

---

these three being the cases cited by applicant in support of his argument. The Limekiln case held merely that it is improper for a municipality solicitor to serve as solicitor to the zoning hearing board where the municipality is a party in interest to the matters before the zoning hearing board.